******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HART PRENDERGAST *v.* COMMISSIONER
OF MOTOR VEHICLES
(AC 38895)

Lavine, Keller and Pellegrino, Js.

*Argued January 5—officially released April 25, 2017*

(Appeal from Superior Court, judicial district of New
Britain, Schuman, J.)

*Malaina J. Sylvestre*, certified legal intern, with
whom was *Kristi Thomaston*, for the appellant
(plaintiff).

*Christine Jean-Louis*, assistant attorney general,
with whom, on the brief, was *George Jepsen*, attorney
general, for the appellee (defendant).

*Opinion*

PELLEGRINO, J. The plaintiff, Hart Prendergast, appeals from the judgment of the Superior Court dismissing his appeal from the decision of the defendant, the Commissioner of Motor Vehicles, suspending his license to operate a motor vehicle pursuant to General Statutes § 14-227b. The plaintiff claims that the court improperly (1) found that there was substantial evidence in the record to support a finding that there was probable cause to arrest him for operating a motor vehicle while under the influence of alcohol or intoxicating liquor or drugs, and (2) concluded that his due process rights were not violated when the hearing officer continued the hearing to subpoena the police officers involved in the plaintiff's arrest. We affirm the judgment of the court.

The following facts are relevant to our disposition of this appeal. On March 27, 2015, at approximately 10:46 p.m., Trooper Josue J. Dorelus of the state police responded to a two car collision on the southbound side of Route 15 near exit sixty-one in Hamden. While responding, he learned that one of the vehicles had left the scene of the accident. Upon arrival, Dorelus observed damage to the right side of the remaining vehicle. The operator of the vehicle told Dorelus that his vehicle was sideswiped by what he believed to be a blue sedan.

Shortly before midnight that night, Hamden police received a call about a suspicious vehicle on Marietta Street in Hamden. The caller had seen the car "come in and park." Hamden police responded and observed the car with four flat tires, parked in the middle of the road with the operator asleep at the wheel.

When Hamden police put out a dispatch about the vehicle, the state police responded, and the officers concluded that they had located a vehicle matching the description of the evading vehicle from the earlier accident on Route 15. Dorelus received a state police dispatch about the matter at 12:11 a.m. At approximately 12:30 a.m., Dorelus arrived at the scene, which was the intersection of Marietta Street and Dixwell Avenue in Hamden, a location immediately off Route 15. Upon Dorelus' arrival, Hamden police informed him that they had found a blue Nissan Altima that appeared to have been in a recent collision. They added that the operator, who appeared to be incapacitated and under the influence of alcohol, was sitting in the driver's seat with the key fob in his pocket. The motor, however, was not running at the time.

Dorelus observed that the damage to the vehicle was consistent with the description provided by the accident victim. The car was in a stopped position facing southbound. The person in the operator's seat, later identified as the plaintiff, told Dorelus that he was traveling from

Meriden and arrived at the location. Dorelus observed that the plaintiff had "a disheveled appearance" and had vomit on the collar of his jacket. As the plaintiff spoke, Dorelus detected an odor of alcohol emanating from his breath, and his eyes appeared to be bloodshot and glassy.

The plaintiff subsequently failed one standardized field sobriety test and declined to take two others. At approximately 12:45 a.m., Dorelus placed the plaintiff under arrest for operating a motor vehicle under the influence of alcohol. At the police station, the plaintiff verbally refused to submit to a breath test for alcohol.

On May 6 and May 27, 2015, the Department of Motor Vehicles conducted a hearing to determine whether to suspend the plaintiff's license pursuant to § 14-227b.[1] On May 27, 2015, the hearing officer rendered a written decision finding that the plaintiff was operating a motor vehicle, that there was probable cause to arrest the plaintiff for operating under the influence, and that the plaintiff refused to submit to a chemical test. On the basis of these findings, as well as the fact that the plaintiff had a prior license suspension, the hearing officer suspended the plaintiff's license for one year. See General Statutes § 14-227b (i) (2) (C).

The plaintiff appealed from the decision of the hearing officer to the court pursuant to General Statutes § 4-183. On appeal, the plaintiff challenged the hearing officer's findings (1) that the police officers had probable cause to arrest him for operating a motor vehicle while under the influence of intoxicating liquor, and (2) that he was operating the motor vehicle. The plaintiff claimed that the administrative record lacked substantial evidence to support these findings. Additionally, the plaintiff claimed that his right to due process of law was violated when the hearing officer, over the plaintiff's objection, continued the hearing in order to subpoena the arresting officer. The court affirmed the hearing officer's decision and dismissed the plaintiff's appeal. This appeal followed. Additional facts will be set forth as necessary.

We first set forth our standard of review. "[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(act), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or question of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted

unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .

"The substantial evidence rule governs judicial review of administrative fact-finding under the [act]. [See] General Statutes § 4-183 (j) (5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . .

"It is fundamental that a plaintiff has the burden of proving that the commissioner, on the facts before him, acted contrary to law and in abuse of his discretion [in determining the issue of probable cause]. . . . The law is also well established that if the decision of the commissioner is reasonably supported by the evidence it must be sustained. . . .

"We have stated that [p]robable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . Reasonable minds may disagree as to whether a particular [set of facts] establishes probable cause. . . . Thus, the commissioner need only have a substantial basis of fact from which [it] can be inferred . . . that the evidence in the administrative record supported a finding of probable cause with respect to the plaintiff's violation of [General Statutes] § 14-227a." (Citations omitted; internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343–44, 757 A.2d 561 (2000).

I

The plaintiff first claims that there was insufficient evidence in the record to establish that Dorelus had probable cause to believe that the plaintiff *operated* his motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a.[2] He argues that because he was not operating his motor vehicle at the time the police found him, the record lacked substantial evidence to support a finding that the police had probable cause to arrest him for operating a motor vehicle while under the influence. We are not persuaded.

"It is well settled that operating encompasses a broader range of conduct than does driving." (Internal quotation marks omitted.) *State* v. *Lee*, 138 Conn. App. 420, 434, 52 A.3d 736 (2012), cert. granted on other grounds, 321 Conn. 911, 136 A.2d 644 (2016). "[T]here is no requirement that the fact of operation be established by direct evidence." *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 345. Our Supreme Court has observed that "[t]here is no distinction between direct and circumstantial evidence [so] far as probative force is concerned . . . . In fact, circum-

stantial evidence may be more certain, satisfying and persuasive than direct evidence." (Citation omitted; internal quotation marks omitted.) Id., 345 n.14. In order for an arresting officer to have probable cause to arrest someone for a violation of § 14-227a, there must be a "temporal nexus between liquor and operation." *Murphy* v. *Commissioner of Motor Vehicles*, 54 Conn. App. 127, 132, 733 A.2d 892 (1999), rev'd, 254 Conn. 333, 757 A.2d 561 (2000).[3] "Although the police officer may draw any reasonable, logical inferences from the facts observed, he may not resort to mere speculation or conjecture, particularly . . . where there is no evidence of a temporal nexus between liquor and operation." Id.

Applying these standards, we conclude that there is substantial evidence in the record to support a finding that Dorelus had probable cause to arrest the plaintiff for operating a motor vehicle while under the influence of liquor or drugs. Dorelus could reasonably and logically infer, on the basis of the facts known to him at the time of the arrest, that the plaintiff had consumed alcohol and had operated his motor vehicle. When the plaintiff was found asleep inside his vehicle, he displayed signs of intoxication.[4] He admitted that he had traveled from Meriden to Hamden. The plaintiff's car had four flat tires and was parked in the middle of a street located immediately off Route 15. The car had damage that was consistent with the description of the damage to the car sideswiped on Route 15 less than two hours before. On the basis of these facts, it was not mere speculation or conjecture for Dorelus to infer that the plaintiff had operated his vehicle while under the influence of liquor. Additionally, the damage to the plaintiff's vehicle was consistent with the accident that had occurred less than two hours before the plaintiff was found by the police, which supports the hearing officer's finding that there was a temporal nexus between the plaintiff's consumption of liquor and operation of his vehicle.[5] Accordingly, the plaintiff's first claim fails.

II

The plaintiff next argues that he was deprived of his right to due process of law when the hearing officer continued his case in order to subpoena the police officers to testify about his arrest. The plaintiff argues that because the defendant already had rested his case, the hearing officer lacked the discretion to continue the case and subpoena the police officers, and that the plaintiff was thereby deprived of his right to due process. We disagree.

The following additional facts are relevant to our analysis of this claim. The initial administrative hearing for the petitioner's case took place on May 6, 2015. Only the hearing officer and counsel for the plaintiff were present at this hearing. The hearing officer, on behalf

of the defendant, introduced the police reports from the plaintiff's arrest. He then stated, "All right. You're up." The plaintiff's counsel then argued that there was insufficient evidence of a nexus between operation and intoxication. The hearing officer responded, "[s]o, what the Department [of Motor Vehicles] wants us to do in these situations is to give the officer one opportunity to come in and sort of clarify his report when these type[s] of questions come up; so, I'm going to have to continue the hearing. We will, on our side, subpoena the officer." The plaintiff objected on due process grounds, but a second day of hearings took place on May 27, 2015, at which Dorelus and the two Hamden officers testified.

On appeal, the plaintiff asserts that the hearing officer's continuation of the case after the defendant had rested his case violated his right to due process of law. The plaintiff, however, has failed to point to any statute, regulation, or case law that would prohibit a hearing officer from continuing the hearing in order to obtain additional evidence under these circumstances. On the contrary, there are statutes and regulations that explicitly *permit* the hearing officer to grant a continuance. Section 14-227b (g) provides that "[a]t the request of [the motorist] or the hearing officer and upon a showing of good cause, the commissioner may grant one or more continuances. . . ." Additionally, the Department of Motor Vehicles' regulations specifically address this situation by stating that "[a]t the hearing the commissioner shall not require the presence and testimony of the arresting officer, or any other person, but the hearing officer may make an appropriate order, as authorized by section 14-110 of the Connecticut General Statutes, to obtain the testimony of such arresting officer or other witness, if the same appears necessary to make a proper finding on one or more of the issues stated in subsection (g) or (j) of section 14-227b of the Connecticut General Statutes."[6] Regs., Conn. State Agencies § 14-227b-18 (a).[7] Here, the hearing officer determined that it was necessary to subpoena the arresting officers in order to make a proper finding on the issue of probable cause to arrest for operation under the influence, and appropriately continued the hearing pursuant to § 14-227b (g). The fact that the defendant had "rested" his case is immaterial to the hearing officer's ability to continue the hearing. Unlike the situation in certain criminal cases, in administrative proceedings there is no rule that limits or prevents an agency from presenting further evidence after it has concluded its case. Cf. *State* v. *Dunbar*, 51 Conn. App. 313, 317–20, 721 A.2d 1229 (1998), cert. denied, 247 Conn. 962, 724 A.2d 1126 (1999); Practice Book § 42-35 (3). "[H]earings before administrative agencies, such as those before the commissioner of motor vehicles, are informal and are not governed by the strict or technical rules of evidence." (Internal quotation marks omitted.) *Santiago* v. *Com-*

*missioner of Motor Vehicles*, 134 Conn. App. 668, 673, 39 A.3d 1224 (2012). In addition, the plaintiff had notice of the hearing and the charges, and was afforded a full opportunity to cross-examine the police officers following the continuation of the hearing. Accordingly, the hearing officer acted within the scope of his authority by continuing the plaintiff's hearing, and the plaintiff was not deprived of his right to due process of law. The court, therefore, properly dismissed the appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 14-227b (g) sets forth a four part test for the administrative agency to assess whether a license suspension is warranted. The following issues must be found: "(1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle. . . ."

[2] The plaintiff challenges the findings made by the hearing officer under both the first and fourth prongs of the four part test set forth in § 14-227b (g) under the same theory that there was insufficient evidence to establish that he operated his vehicle or that there was probable cause for the police officer to arrest him for operating his vehicle while intoxicated. Because we conclude that there was sufficient evidence to support a finding of probable cause to arrest for operating under the influence, our analysis disproves the plaintiff's theory as it applies to either the first or fourth prongs of § 14-227b (g).

[3] Although our Supreme Court reversed this court's decision in *Murphy*, it did so by applying the same "temporal nexus" standard. *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 347.

[4] Specifically, Dorelus observed that the plaintiff's eyes were bloodshot and glassy, he had a disheveled appearance, and he had vomit on his collar. Additionally, the plaintiff failed one field sobriety test before refusing to submit to any additional tests.

[5] The plaintiff cites *State* v. *DeCoster*, 147 Conn. 502, 162 A.2d 704 (1960), for the proposition that there was insufficient evidence to support a finding of a temporal nexus between liquor and operation on the basis of the evidence presented in his hearing. In *DeCoster*, the defendant was convicted of operating a motor vehicle while intoxicated. Id., 503. The evidence supported a finding that a police officer found the defendant, who was intoxicated, slumped over the steering wheel of his motor vehicle. Id., 504. The vehicle's key was in the ignition, but the ignition was in the off position. Id. The two right tires on the motor vehicle were flat, and the vehicle exhibited body damage on its right side. Id. Four traffic signs close to where the motor vehicle was stopped had been knocked down. Id.

In reversing in part the conviction on the ground of insufficient evidence, our Supreme Court in *DeCoster* concluded that the state had failed to demonstrate the critical temporal nexus between intoxication and operation. Id., 505. The court noted that although the evidence supported an inference that the defendant's motor vehicle had struck the signs along the nearby intersection, there were no witnesses who had observed the defendant operating the motor vehicle and no evidence to show how long it had been stationary. Id., 504–505. The present case is distinguishable in at least two regards. First, *DeCoster* was a criminal case requiring proof of operation beyond a reasonable doubt, whereas the present case is an administrative case with a lower burden of proof. Second, there were no witnesses in *DeCoster* who could help establish the time that the stop signs were hit. Here, after speaking with the accident victim, Dorelus was able to establish that the accident had occurred within two hours from when he located the plaintiff. *DeCoster* is therefore distinguishable from the plaintiff's claim.

[6] We also note that allowing the hearing officer the option to subpoena the police officers after reviewing the evidence is in the interests of efficiency and judicial economy. To require the presence of police officers at every § 14-227b hearing would be a significant waste of resources, as police officer

testimony is not always necessary for the hearing officer to arrive at his or her findings.

[7] General Statutes § 14-110 (a) provides that "[t]he commissioner . . . in the performance of his duties, may . . . issue subpoenas. . . ."

—————————————————————